The second case this morning is 522-0275, People v. Howder. Arguing for the plaintiff appellant is Bradley Yarka. Arguing for the defendant appellee is Jennifer Camden. Each side will have 20 minutes for their argument. The appellant will also have 10 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Welcome. Mr. Yarka, you ready to proceed? Yes, your honor. Thank you, Joe. Good morning again, your honors and counsel, and may it please the court. My name is Brad Yarka from the Office of the State Appellate Defender, and I represent the defendant appellant, Glenn Howder. The state's admission that it could not prove Exhibit 4 depicted R.H. set off a chain of errors that led to one major flaw in Mr. Howder's prosecution. The state attempted to prove the charges against Mr. Howder by arguing that evidence of uncharged conduct could substitute for evidence supporting the actual charges the state chose to bring. And I plan to address three arguments from the briefs that most directly implicate that flaw this morning. First, as to Argument 1, this court should reverse Mr. Howder's conviction for child pornography outright because R.H.'s testimony failed to establish that any depictions of her were lewd. Second, as to Argument 3, because the evidence was closely balanced, the admission of R.H.'s out-of-court statements without a pretrial reliability hearing was either plain error or ineffective assistance of counsel. And third, as to Argument 4, the state's inability to prove Exhibit 4 depicted R.H. erroneously transformed Mr. Howder's trial into one heavily focused on inadmissible other crimes evidence. And of course, I am happy to answer questions about any of the other arguments in the briefs as well. But turning first to the state's failure to prove the child pornography count beyond reasonable doubt, this court should reject the state's attempts to rely on conduct, as opposed to testimony about the four corners of any alleged depiction of R.H. and find that R.H.'s testimony fails to establish lewdness. Now, the state was in complete control of its presentation of the evidence in this case, and it never asked R.H. to identify Exhibit 4 as a photograph of herself, and in fact, never even asked R.H. if Exhibit 4 was similar to any of the photographs that she saw of herself. And because, as this court made clear in People v. Weyman, charges of child pornography are not interchangeable, and because the state did not charge Mr. Howder with simple possession of child pornography, it was not enough that Exhibit 4 simply existed on Mr. Howder's phone. Without proof that Exhibit 4 depicted R.H. specifically, the jury was left without any visual depiction to reference in deciding Mr. Howder's guilt for the offense the state actually charged. And as this court said in Weyman, it is extremely difficult to prove an allegation of child pornography without evidence of the charged depiction. And this is so because, as the Illinois Supreme Court explained in People v. Lamborn, nudity without lewdness is not child pornography. And critically, Lamborn makes clear that the focus of the lewdness inquiry is on the photograph itself and not on the circumstances surrounding the taking of the photograph. And these well-settled principles resolve this case. Without an actual depiction, the jury was left to rely on R.H.'s testimony about what any photographs of her depicted, and she testified only four times about the content of any photographs taken of her, and said they depicted her private areas, which she clarified meant some combination of her naked vagina and breasts. And all of this testimony establishes, at most, the fourth Lamborn factor, nudity. But again, nudity alone is not enough. And even if R.H.'s testimony could be construed in a light most favorable to the state, to mean that the images focused on her genitals or breasts, adding the first Lamborn factor into the mix, the state's own cases, particularly People v. Rodriguez Ocampo, say that even that combination of Lamborn factors is not sufficient to establish lewdness. So instead, the state has relied almost exclusively on testimony about conduct to attempt to establish the remaining Lamborn factors. But as the Second District of this court in People v. Sven expressly rejected reliance on, quote, the manner of the photographs making and other facts external to the image, even if those facts are, as the court in Sven put it, unsavory, or as the court in Lamborn put it, abhorrent. And the state has cited no case in which this court or the Illinois Supreme Court has permitted the trier of fact to infer information about the content of the photograph from the manner of its making. And indeed, every case discussing the lewdness of depictions that the parties do cite, say for Wayman itself, involves the state's presentation of an actual photograph or video to the trier of fact. And there are practical reasons for not considering the manner of the making of the photograph, because images can be manipulated both before and after they are taken, so that the subject of the photograph is not necessarily the person or thing that the camera appears to be aimed at. And this court actually saw that in Wayman itself, where two of the images at issue were cropped versions of the original images that the victim's mother testified about. So there is just no way to know what the content of any image might be, just because we have some information about how it was taken. And ultimately, R.H.'s testimony that the depictions of her showed at most nudity did not prove lewdness beyond a reasonable doubt. So let me stop you for a second. The picture that she described that he took of her when she was on the bed and her legs were on his shoulders, that would not pass muster as lewd? So two answers to that, Your Honor. The first answer is no, because we don't know whether the And for that particular depiction, R.H. actually expressly testified that she did not see the photograph or video that was the result of that interaction. So we don't have any testimony in the record about what the final depiction related to that interaction even was. So we just cannot say what the depiction related to that interaction actually looked like. We know only the actions surrounding the depiction, the creation of the depiction, which as this court and the Illinois to prove lewdness. So I think that would resolve that particular interaction for the purposes of this case. And I would just conclude this issue with one quick point about the standard of review. So under People v. Lamborn, the evaluation of lewdness is an objective one based solely on the four corners of the image. So there is no need to evaluate credibility or rely on the deference usually owed to the fact finder. And just as a pragmatic point, we made this point in the opening brief. There is no, there's no reason to give the state the benefit of a more favorable standard of review because it has mustered less evidence of a particular element at trial. And this court is in no worse position than the fact finder was in terms of evaluating R.H.'s testimony to determine whether or not any depictions of her were lewd. So we would urge this court to depart from Wayman in one respect and bring this court back into alignment with the But whichever standard of review this court applies, R.H.'s testimony about the actual content of the images is insufficient to establish lewdness beyond a reasonable doubt. And this court should reverse outright Mr. Hatter's conviction for child pornography. This court should also reverse and remand for a new trial on any count for which it finds the evidence sufficient. And I'll turn first to argument three from the briefs, which was the R.H.'s out-of-court statements to Cheryl Woodham and Megan. And the error in admitting R.H.'s hearsay statements is quite straightforward. Section 115.10 of the Code of Criminal Procedure only allows the introduction of hearsay outcry statements of minor victims if the trial court has a pre-trial hearing to determine the reliability of those statements. And under People v. Mitchell, that hearing is not optional. And it is error for the court to admit hearsay statements under 115.10 without that hearing. So why isn't it invited error where defense counsel said, I'm okay with that coming in as long as it's the edited version? Sure. So I would say it's not invited error for three reasons. And actually, this court can set invited error completely to the side for these same three reasons. So the first is that trial counsel actually did object, albeit on different grounds, when both of these statements were admitted. So at page 495 of the report of proceedings, trial counsel objected to Megan's testimony on the grounds of relevance. And then at pages 649 through 50 of the report of proceedings, counsel objected to the Guardian Center interview on the grounds of foundation. Now, of course, those are not the errors we're asserting here related to these statements. But that's why we admitted in the opening brief that this issue was forfeited. But that's just forfeiture, not invited error. And then the second reason, which is that the not on reliability. There was no discussion at all of reliability at that pre-trial hearing about the Guardian Center interview. So any agreement that counsel may have made cannot reasonably be read to have related to the strictures of section 11510. And then finally, the simplest reason that this court can set invited error aside is because at page 23 of its brief, the state concedes that this error is reviewable as an effective assistance of counsel anyway. So there's no reason to not get to the merits of this issue, either for the first two reasons that I said or because the state has already conceded that this court can reach the merits under the rubric of ineffective assistance of counsel. How is it not part of trial strategy when the defense counsel in his opening statement said or argued that RH had been coached and the jury would hear the changes in the story as time progressed on hearing how she was coached. So that seems to imply that was part of the strategy. I want this to come in so you can hear, the jury can hear, leading questions or how the story changed or something along those lines. There are two reasons, Your Honor, that I would say that it's not trial strategy. The first, as we've already discussed, trial counsel actually objected to the admission of both statements when they came in. So we know trial counsel strategy was at least at some point to try and have both of those statements excluded. The second reason is that any strategy of testing the reliability of those out-of-court statements in front of the jury is flatly inconsistent with Mitchell, which requires those types of determinations to be about hearsay statements to be made outside the presence of the jury before the statements are admitted in the first place. And I would point, Your Honor, to the Supreme Court's description of prejudice in Mitchell because that also counsels against deference to any strategy that trial counsel may have had in attempting to admit the out-of-court statements without a reliability hearing. So in Mitchell, the Supreme Court said that the complaints of minor victims become more credible, more reliable, and better understandable when they're supported by testimony of adults that are offering corroborating testimony. And so there's simply no reasonable strategy for admitting such powerfully corroborative testimony in front of a jury without testing the reliability before trial under Section 115.10, especially when the evidence in this case was otherwise so closely balanced. And that brings me to the closely balanced nature of the evidence in this case, which is why counsel was both ineffective and it was plain error. And here the state makes one overarching error in arguing that the evidence was not closely balanced. It focuses only on one element of one offense, the existence of a depiction of R.H. on Mr. Howder's phone. The state, however, throughout its brief ignores the closeness, indeed the insufficiency, of the evidence on lewdness and the closeness of the evidence as to both abuse counts. So we've already covered the insufficiency of the evidence of lewdness, and for the reasons that it's both R.H. and Mr. Howder testified under oath that there was no contact between Mr. Howder's penis and R.H.'s vagina, meaning the only evidence of that count came from the Guardian Center interview, which as we've discussed was erroneously admitted without a reliability hearing. And then as to count two, the jury was left with just a classic he said, she said, and the state argues that Mr. Howder's denials were inconsistent and incredible. But again, they only make that argument as to the existence of exhibit four on Mr. Howder's phone. There is no evidence that Mr. Howder ever equivocated in his denial of any of the abuse counts. So as to all three counts that the state brought to trial, the evidence was at least closely balanced if it was not outright insufficient as to counts one and three. And so for those reasons, whether as plain error or ineffective assistance of counsel, this court should find error in the failure to R.H.'s out-of-court statements to both Cheryl Woodham and to Megan and reverse and remand for a new trial. I'll turn finally then to argument four in the briefs, which is that the state committed further error where after admitting it could not prove exhibit four depicted R.H., it transformed a substantial portion of Mr. Howder's trial into one about inadmissible other crimes evidence. And there are three errors related to other crimes evidence that warrant a new trial that we've on two of them here this morning. The first is that the state converted exhibit four into other crimes evidence by admitting it could not prove it depicted R.H. And the second is that the state destroyed the relevance of exhibits five and six by admitting it could not prove exhibit four depicted R.H. And I'll turn first to exhibit four itself. The state committed the same error it committed throughout the trial and throughout its briefing in this court, treating images of child pornography as if they are interchangeable and as if the lewdness of one can prove the lewdness of the other. But that is not the law. And there is agreement across those cases that both parties cite, including Lamborn, Sickle, Sven, and Lewis, that the lewdness of an image can only be determined by examining the content of that image. So the state cannot take an uncharged image and urge the jury to convict because the charged image may contain a similar depiction. And the state cites no authority for the proposition that it can do that. And I would urge the court to take some guidance from its prior decision in People v. Wade because it provides an example by rejecting the substitute evidence theory even for firearms, which are fungible evidence. And so this court should reject the argument even more forcefully in this case for images of alleged child pornography, which are not fungible. And ultimately, there is no way to determine, as the state argues, that exhibit four might have been admitted as other crimes evidence, even if it had been sought to be admitted for that purpose, for many of the reasons we've already discussed. There is simply insufficient evidence about the actual depictions created to properly apply section 115-7.3 of the Code of Criminal Procedure. So we don't know where exhibit four came from or when it was created, so we don't know whether it was created, as the state argues at page 41 of its brief quote-unquote close in time to the state's allegations. We don't know with sufficient specificity what the actual charged depictions show, so we cannot compare the charged depictions with exhibit four, and the state cannot rely on the photograph that, and I'm going to quote here again from page 41 of its brief quote, necessarily would have been created unquote, because that relies exclusively on matter external to the image, namely the conduct in creating it. And further, the state cannot rely on the fact that it quote-unquote might be RH in exhibit four to avoid in other crimes analysis, because it failed to offer any evidence, any evidence that exhibit four depicted RH, which was its burden to do. And for similar reasons, the state failed to prove, because the state failed to prove exhibit four depicted RH, it destroyed the relevance of exhibits five and six. I only really have one main point to make in this regard, which is that the trial court admitted exhibits five and six specifically because exhibit four was similar quote, in nature and composition to the accounts charged in the Edwards County case, which is exhibits five and six. It then based its admissibility decision further on RH being quote, willing to testify as to her knowledge of the photograph depicting her end quote. But RH never offered any such testimony, making it impossible to judge the similarity that the trial court relied on in admitting the evidence. And so the essential component of admissibility under section 115-7.3c, similarity to the crime charged, no longer exists as to exhibits five and six, and the trial court should have excluded those once the state failed to prove that exhibit four depicted RH. And overall, the state's treatment of exhibit four rendered a substantial part of its case, other crimes evidence, making the error prejudicial, given the closely balanced nature of the evidence. So Mark Sheftick's entire testimony essentially became about other crimes evidence. He only testified about exhibits four, five, and six. And that was a testimony that would tend to persuade since he was qualified as an expert. And RH also testified about instances of Mr. Howder photographing her, which as we discussed in the briefs was also uncharged other crimes evidence. So there can be no confidence then that the jury convicted Mr. Howder for the conduct the state actually charged him with, as opposed to uncharged other crimes evidence. And this court should therefore reverse and remand for a new trial on that basis as well. If the court has no further questions, I'll conclude with this. The state has urged the jury to find Mr. Howder guilty based in large part on conduct unrelated to the charges it chose to bring. It urges this court to affirm Mr. Howder's convictions for the same reasons, but borrowing the language of plain air and ineffective assistance of counsel and for the reasons discussed this morning and in the briefs, this court can have no confidence in the reliability of the outcome of this trial. So this court should reverse Mr. Howder's convictions on counts one and counts three and reverse and remand for a new trial on count two. Thank you, Mr. Jerken. Questions, Justice Barberos? No. Justice Bowie? No, thank you. Ms. Camden, are you ready to proceed? Yes, Your Honor. You may do so. Thank you, Your Honor. May it please the court, counsel, Jennifer Camden on behalf of the people. On issue one, this court stated in the Wayman case in 2008 that it would be possible for the state to prove child pornography in a case where the images at issue are unavailable through no fault of the state. And here the state is arguing that this is that case. Four sets of images were described in R.H.'s testimony and the defendant on appeal is not contesting the sufficiency of the evidence of the existence of any of those images. He's contesting whether the state proved that any was lewd. And on the issue of standard of review, this court in the Wayman case ruled that in this type of case, lewdness is not reviewed de novo and that the issue is whether viewing the evidence in the light most favorable to the state, a reasonable jury could have found that R.H.'s testimony sufficiently established beyond a reasonable doubt that at least one of the images she described was lewd. The state today will focus on the first set of images here and on its brief as to the other three. In that first set, R.H. testified that at the defendant's direction and on multiple occasions, she squatted naked over the defendant's phone on the bathroom floor, saw that the phone's camera showed her naked genitals and leaned over and took pictures and that she did this at the direction of defendant who showed her how to do it and how to pose over the camera. So that was the evidence. And it's the defendant's position that the only evidence about the content of those photographs is R.H.'s testimony that they showed her naked genitals and that the state's relying impermissibly on inferences for the rest. But a jury can draw reasonable inferences from the evidence under typical Jackson versus Virginia standards. And here it was reasonable for the jury to infer that R.H.'s crotch was within inches of the camera's lens based on her testimony that she took the photos while squatting over the phone. She also said that the camera showed her naked genitals. So the jury reasonably could have inferred that the pictures were extreme close-ups of them. In fact, that's the only inference flowing naturally from the evidence. And although the lewdness inquiry is focused on the four corners of the photographs when they are in evidence, here the evidence of lewdness was testimonial as contemplated by this court in the Wayman case. And based on R.H.'s testimony, jurors could draw reasonable inferences about what was within the four corners of the resulting images. So the state's analysis here is consistent with the case law. The type of evidence that's been discounted as external under the Sven case cited by the defendant includes such matters as the state of mind of the creator of the images or the imagined reaction of a viewer of the images. In on the page. But here the evidence of the content of the images was presented through R.H.'s testimony that, for instance, with regard to the first set, that she took pictures of her naked genitals while squatting over the camera. That wasn't evidence about what anybody was thinking. It was evidence about what was within the four corners of the resulting image. And the jury could rely on that. And also the standard here is beyond a reasonable doubt, not beyond all doubt. And jurors need not search out an explanation consistent with innocence and raise it to the level of reasonable doubt. They could weigh the evidence using their common sense and life experience, and they need not have speculated that the camera captured a view other than maybe reasonably inferred. And as for defendant's speculation that the images may have been cropped or manipulated, the defendant here charged with soliciting or persuading or inducing R.H. to appear in a lewd photograph. So as in Wayman, any modification of the photograph after it was taken is irrelevant to whether the original image was lewd and whether the state presented evidence from which a reasonable finder of fact could so found. And so with that, the state will turn to issue three regarding the invited error that the state is arguing here. First, there are two independent ways in which defense counsel invited the admission of R.H.'s video statement to the forensic interviewer. First, that defense counsel himself elicited the content of R.H.'s statements to Woodham during his cross-examination of both R.H. and Woodham. So the invited error doctrine bars him from complaining about the told the court prior to trial that he had no objection to the state introducing an edited video and he didn't care how much of it was published. Now, the defendant notes that he objected to the admission of the edited video during Woodham's testimony at trial, but when the state offered the edited video into evidence, the defense objection was that the jury wouldn't see enough of it. The objection was triggered by Woodham's testimony that only irrelevant material had been edited out of the video. Counsel's position was that the redacted material was relevant. Counsel's consistent position, both before trial and at trial, was that he wanted the jury to see or at least hear about the whole thing. So his objection on that basis did not alter his pretrial reassurances that it was not necessary to further consider issues related to the admissibility of the video. He deliberately acquiesced to its admission as a matter of trial strategy. Now, the defendant protests that he didn't specifically concede prior to trial that it was reliable and therefore he shouldn't be deemed to have invited it. But first, this is a separate issue from his invitation of video through his own cross-examination of two witnesses on those matters. And also, I don't know how much more clear an admission, the invitation could be than by saying, I don't quote, I don't object to the state introducing an edited version of the interview to the jury at page 238. And again, as the appellate court explained in the Acquisto case, which is cited in the answer brief, this assured the state and the trial court that it could proceed without that section 115-10 hearing. There are also two independent ways in which defense counsel invited Megan's testimony on direct. First, by inviting the admission of the video in which R.H. made similar statements. And again, because defense counsel elicited cumulative or similar testimony through his cross-examination of both R.H. and Megan. Now, defendant again protests that defense counsel filed or lodged objections to Megan's testimony. But first, the Megan because R.H. knew that Megan had herself been the victim of child sexual abuse. The court barred Megan from saying this. And then later in the sidebar, defense counsel explained that he'd objected to her testifying at all because he'd overheard her say that she took Xanax before testifying. The court questioned her, ruled that she was competent to testify, and the state's direct examination continues. So despite these objections, defense counsel still invited Megan's video and eliciting cumulative or similar evidence through his cross-examination of witnesses. So any error from the admission of this evidence was invited, and defendant's only recourse is to challenge defense counsel's trial strategy. And here that trial strategy was manifestly reasonable, where from his opening statement through his closing argument, the strategy was evident that he desired to argue that R.H.'s relatives had coached R.H. and that her story had kept changing and that the video statement would show this. Also, defense counsel knew that R.H. would testify, so he reasonably chose a strategy to challenge her credibility by using the content of these statements. That's what defense counsel did in the Johnson case, the fourth district case from 2022, in which the appellate court also held that counsel had reasonably stipulated to the admissibility of the victim's prior statements rather than insisting on a section 115-10 hearing. So under those circumstances, the admission was invited. As for the issue of prejudice, R.H.'s statements, again, were largely cumulative, so the defendant cannot show that it was the evidence that showed a reasonable probability of a different result. As to the issue of plain error, which in issue three only arises if this court rejects the invited error argument, but which is also relevant to the disposition of issues four and five, in which the defendant is also asserting first-prong plain error, the state's argument is that the evidence was not closely balanced for several reasons. There was propensity evidence against the defendant, there was corroboration and circumstantial evidence supporting R.H., there was evidence of the defendant's consciousness of guilt, and various parts of the defendant's testimony at trial were implausible or contradicted by his prior statement to police or by the forensic evidence. And because those witnesses' accounts were not equally credible, there was no plain error. Also, apart from the closely balanced inquiry, the challenged evidence in issue three was largely cumulative of unchallenged evidence, so again, the defendant cannot show that it was the challenged evidence alone that tipped the scales. The defendant protests that much of the state's argument is about the evidence on issue one, the child pornography count, but the propensity evidence against the defendant was relevant to all three counts, and this alone shows that the evidence was not closely balanced. Also, the overall credibility of the defendant and R.H. was not closely balanced, because again, the defendant's testimony was implausible and with respect to any of the three counts. I could also argue that the evidence of the defendant's consciousness of guilt went to all three counts. The defendant protests that evidence of lewdness was not closely balanced on count one, but the lewdness inquiry involved R.H.'s testimony alone, there was no competing evidence, it wasn't closely balanced against anything at all, so this didn't involve a credibility contest at all, and in any event, nothing about the non-cumulative portions of the challenged evidence of R.H.'s prior statements would have tipped the balance on the lewdness inquiry. As a factual matter, I'd like to note that in the reply brief on page 12, the defendant argues that images of adult pornography were co-mingled with images of suspected child pornography. That's not accurate, the adult pornography was on the micro SD card, and the child pornography was in internal SD storage in the image cache of either the gallery app as to exhibits five and six, or the gallery and google plus apps as to exhibit four, that's on page 795 of the record, and this goes to the prohibitive value of those exhibits. The state will stand on its brief as regards the rest of the plain error inquiry, but the evidence here was not closely balanced under the case law cited by the state in the answer brief. Moving on to issue, sorry, four, the trial court, and first with respect to exhibit four, the trial court admitted that exhibit at trial in full knowledge of the state's theory of its relevance and authenticity, which was that it might or might not depict R.H., but it was found on the defendant's phone. The state informed the court and defense counsel of this in opening statement, and during trial regarding the admission of exhibit four, and the state repeated this to the jury in closing argument. No other crimes analysis was required because it wasn't necessarily evidence of another crime, and it wasn't offered as such, so the defendant has not shown a clear and obvious abuse of discretion in the courts admitting it without an other crimes analysis, because it's challenged as first prone plain error, that's the issue, whether there was a clear and obvious abuse of discretion here. The exhibit was admissible as circumstantial evidence. It was relevant because its existence in two places on the defendant's phone made his guilt more likely. It corroborated R.H.'s testimony that he had her use that phone to depict itself, and it was when he babysat R.H., when he claimed to have had sole authority to operate that phone, and at a time when the forensic evidence showed that it was not being used to get online. Now, the defendant argues that lewdness can only be determined by examining a picture at issue and not some other image such as this image, but the state didn't argue below, and isn't arguing now, that the state proved lewdness on count one based on exhibit four. Lewdness was an issue for the jury based on R.H.'s testimony, so in any plain error or ineffective assistance argument related to issue four, the defendant hasn't shown that the admission of this exhibit was prejudicial, because the state, again, the state did both an opening statement and closing argument was frank about the probative value of the image and said that maybe it was R.H. and maybe it was not. The state used the exhibit appropriately at trial and never argued that it proved lewdness based on the photograph, and that distinguishes this case from the Wade case, which defense counsel mentioned here, in which the gun admitted was definitely not the gun used in the crime, but here it, again, was not clear whether exhibit four was or was not R.H., and the state never argued that it was, that it had made that showing. With respect to issues five and, or sorry, exhibits five and six, the trial court made a written, I'm sorry, the trial court made a pre-trial ruling, a written ruling, and that was by one judge, and then at trial, about a year, year and a half later, it was, the trial was before a different judge, so the defendant here is challenging the pre-trial court's rationale for finding exhibits five and six admissible, but it's the court's ruling at trial, not the rationale of the pre-trial court, that's an issue here, and the, and again, where the record doesn't show that exhibit four did not depict R.H., the defendant hasn't shown a clear and obvious abuse of discretion in admitting exhibits five and six, even based on that rationale, but that's not what happened. The trial court admitted exhibits five and six after extensive arguments at trial, after the state had made clear its position that exhibit four might or might not depict R.H., and the state did that both in opening statement and the state had just done that on argument on exhibit four prior to the arguments on exhibits five and six, and again, it's that ruling and not the pre-trial rationale that's at issue here. That pre-trial ruling wasn't even final, and we know that because defense counsel had sought and won modification to it prior to any of this happening by the exclusion of exhibit seven. The defendant argues in the reply brief at page 20 that the court had linked its finding of substantial similarity to its belief that R.H. would testify and identify herself in the picture, but again, that's regarding, that's about the rationale, not about the ruling, and also the court expressed that belief on page C93 while saying that the only difference was that the victims in exhibits five and six were unknown, whereas here the court believed that R.H. would identify herself. The court wasn't saying that exhibits five and six were substantially similar because R.H. would identify herself. It said that that difference would not disprove their similarity, and again, the rationale is not at issue here, and in the alternative, the state argued in the answer brief that exhibits five and six would have been admissible to show propensity to commits count two and three or that the exhibits were admissible under common law for various purposes. As the trial court ruled, the defendant in the reply brief responds that possessing exhibits five and six would not necessarily have shown propensity to sexually abuse one, but section 115-7.3 does not require propensity evidence of other crimes to be limited to evidence that the defendant had committed other instances of the exact crime charged. It explicitly provides that evidence of child pornography is admissible as probative of propensity to commit aggravated criminal sexual abuse, so this was a basis for the admission of exhibits five and six to show propensity, and I note that the jury instruction did not limit their use to count one, and this court can see for itself from the record that there was no mini-trial on exhibits five and six, and that both before trial and at trial, the court had severely limited other crimes' evidence. The vast majority of the other crimes' evidence that was offered was barred by the trial court. The defendant has not shown an abuse of discretion, a clear and obvious abuse of discretion, in the court's admission of it here. And then finally, I'd like to make a note about issue five regarding the admission of the evidence about A.H. The defendant continues in pages 22 and 23 of the reply brief to characterize the excluded evidence as evidence that she affirmatively denied that the abuse of A.H. occurred, but here there was no offer of proof that A.H. or Woodham would have testified that A.H. affirmatively denied it. The record doesn't show what they would have said. A.H.'s video statement is not in the record, and the parties gave conflicting characterizations of it regarding whether A.H., who was then seven years old, simply failed to or denied the allegations, as the defense said. So as the state explained in its brief, this court must resolve that conflict against the defendant. So for purposes of this plain error claim, the content of the excluded evidence is that A.H. didn't disclose sexual abuse, and the defendant has not shown that the court abused its discretion in excluding that evidence. So for these reasons and the reasons stated in the answer brief, I respectfully request that the court affirm. Thank you, Ms. Camden. Questions, Justice Barberos? No. Justice Bowie? I just want to touch on, so I'm correct if my notes are correct, when we talk about or when you all talk about this lewdness, quote-unquote lewdness, evidence, and then I think, Ms. Camden, you said when talking about the propensity evidence, talked about the defendant's consciousness of guilt. Are you referring, and again, if my notes are correct, my note here is that there was an expert that testified that images had been deleted from the defendant's phone. Is that what you're discussing there? Yes, Your Honor. Okay. Deleted from his phone during the three-day period between R.H.'s initial outcry and the seizure of the phone. Right, because I believe, if I said she saw the pictures on the phone and then when they took the phone, presented it to the search warrant, did, you know, dump the phone, whatever you want to call it, that the expert testified that those images had been recently deleted between in that short period of time, correct? Correct, Your Honor, and this goes to the Wayman case in which this court had held that child pornography can be found where images are unavailable through no fault of the state, and it's that deletion that's the basis for the argument that the images were unavailable through no fault of the state. Thank you. I do have a follow-up question since Justice Buies. The expert, Shetnik, he testified that the one phone that had the images of R.H. or alleged images of R.H. on them had been disconnected months earlier and did not contain, didn't have its own individual service, and I believe at one point in your brief, quoting from the testimony, he said that any images on there after it had been disconnected, he had not been using that phone to get on the internet, but had, you know, those images probably were taken from the camera app of the phone. My question is, if you have a disconnected phone such as that S4 Mini, if it has a Wi-Fi connection, he can surf the internet with Wi-Fi even without it having its own dedicated internet connection, correct? Your Honor, I'm not sure whether Shetnik specifically said that that would or wouldn't be the case, or that the fact that the phone had been disconnected from service would have necessarily meant that, but I do know that separately Shetnik did testify that through his analysis of the phone, the phone had not been used to get online, and I believe that the defendant also testified that during the reported cached on his Google Plus and gallery apps, the defendant himself also said that he'd not been using that phone to get online. Okay, all right, yeah, that is what, that I was referring to the brief, on your brief on page 30. However, defendant said that when the image was cached, the S4 Mini did not have service, and he was not using it to go online, so he wasn't suggesting that it could not have been used, he was simply saying that from, I guess, his understanding it wasn't being used to go online. I'm sorry, are you referring to Shetnik there? Yes, yes. I'm not sure whether Shetnik's statement that it wasn't being used to get online was based on on the fact that it wasn't in service, or whether it was based on, or whether that statement was based on his forensic analysis of the phone and the metadata it contained. Okay, all right, thank you. Thank you. Mr. Jarka, rebuttal? Thank you, your honor. I do have several points, so I'll try to be at Mr. Howder's discretion, that she was squatting, that she was bent over to take the picture, and all of those, all of that testimony is about conduct, and what the state says about Sven is that Sven was about things like the defendant's intent being external to the image, but Sven says that any, excuse me, the manner of the image's making, and that's at page 231 of the opinion, is irrelevant to the question of lewdness just as much as any other fact external to the image, so it does not matter that we have information in this record about how the images came into existence. The only thing that this court can look to to evaluate the lewdness of the image is RH's testimony about the content of any images she saw on the phone. Now, the state argues that the jury could have drawn reasonable inferences, and that's true if this court retains sufficiency review, but the inferences have to be reasonable, and the courts universally hold that conduct is irrelevant, so any inference that is based on the fact of conduct used to create the image is definitionally not a reasonable inference for the jury to use to establish lewdness. Moving to argument three, the state argues that the defendant invited the error by eliciting the testimony himself, but as we cited, People v. Alvarado in the reply brief, it is not invited error for a defendant to use erroneously admitted evidence to the best that he can once that and that's exactly what happened here, and again, we know from counsel's objections that this was not his strategy to have the evidence admitted, and the state quotes defense counsel's agreement to admit the edited version, but the key part of that quotation is edited version. The only thing that counsel was agreeing to in that discussion was the editing of the video and the fact that the edited version was going to be admitted. Again, there was no discussion pre-trial about the reliability of the out-of-court statements. People v. Mitchell could not be more clear that that is reversible error. I would like to address the state's reliance on Johnson and, relatedly, its reliance on People v. West in its brief for the purposes of harmless error. In both West and Johnson, the trial court actually held a hearing under 11510. In West, the court heard argument, and in Johnson, the court accepted the party's stipulations to the reliability of the statement, so on appeal, the question before both courts was the substance of the reliability determination, not the antecedent question about whether proper procedure had been followed under Mitchell, and indeed, neither West nor Johnson even cite Mitchell in their discussion because the question of a proper hearing was not that issue in those cases. I will say that even if this court relies on Johnson for the substance of its holding despite its procedural differences, this case is distinguishable on the ineffectiveness claim. One of the key aspects of the reasoning in Johnson was that there was no evidence at all in the record about the possible unreliability of the statement, and we pointed in the reply brief to some evidence of unreliability here, namely RH's testimony that she was aware of family strife between Mr. Howder and his ex-wife, and so unlike Johnson, there is at least some evidence of family animosity that may have made an unfounded or exaggerated allegation. There is also some evidence that the language RH used to describe Mr. Howder in her Guardian Center interview, sex offender and sexual predator, she learned those words from her mother Jessica. She did not come across them of her own knowledge or organically. RH then added an allegation at trial that was nowhere in her Guardian Center interview, and she testified that the purpose of her Guardian Center interview was to get her story straight. Now, she did clarify later that what she meant by that was that Woodham was going to help her get out what happened that day, but these hints at some evidence of unreliability show the exact reason that this type of unreliability should be tested before trial outside the presence of the jury, and I'm not arguing that any of those facts established conclusively that the statements were unreliable, but again, they just give evidence for exact reason that the court in Mitchell requires these types of determinations to be made before trial. Turning finally to the other crimes evidence, the state argues that Exhibit 4 could have been admissible because it may or may not have depicted RH, but there is no way that Exhibit 4 could have been anything but other crimes evidence in this case. Again, there is no explaining that Exhibit 4 depicted her or similar to the images that were depicted, and then I'm going to spend some time on Sheftick's testimony about Exhibit 4 because he was thoroughly cross-examined about the provenance of Exhibits 4, 5, and 6. He admitted he could not say when any of those images came to be on Mr. Howder's phone. He admitted that he could not say whether Mr. Howder's phone created the images or whether the images came from a website or social media. He even admitted that the cache date has relatively little significance because the cache date is not the same as the image creation date. And then finally, as to the deletion activity, when I said in the reply brief that the adult pornography was commingled with the child pornography, I didn't mean its literal location on the cell phone. I just meant that there were images of both types on the cell phone, and Sheftick expressly testified that he could not tell which images had been deleted when he was describing the deletion activity. So there is just is corroborating that actually corroborates the fundamental issue in this case. Did Mr. Howder solicit a lewd depiction of RH? And because Exhibit 4 is not RH, and we were circumspect about this in the reply brief, but I think the only reasonable inference in this case is that Exhibit 4 does not depict RH. There's absolutely no evidence that it does, and there's nothing that even could lead to a reasonable inference that it does. And ultimately, what that means is that the state has proved Mr. Howder's guilt using evidence unrelated to the charges that it actually brought. If the state wanted to prosecute Mr. Howder for simple possession of trial pornography, it could have done and did do in Edwards County. But this was a specific case about an identifiable victim, and the state has not proven beyond a reasonable doubt that any depictions of RH were lewd, and it committed several trial errors that warrant reversal and remand for a new trial on any count for which this court finds the evidence sufficient. I'm happy to take any questions if the court has any. Otherwise, we would ask for the relief that was argued for today and those in the briefs. Thank you, Mr. Jericho. Justice Barbera, questions? No questions, but I would like to commend both of you for really good briefs and very good arguments today. Justice Bowie? No questions, but I would agree with Justice Barbera with that. Thank you, counsel. I would agree also. We were a little reluctant with the time increase, but you covered the time well and did not repeat yourselves or filed the same ground twice. I think you did a good job with the arguments, so we appreciate your arguments. We'll take the matter under advisement and issue a decision in due course.